J-S20043-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JOHNATHAN WALLACE :
:
Appellant : No. 913 MDA 2024

Appeal from the Judgment of Sentence Entered November 9, 2023
In the Court of Common Pleas of Centre County Criminal Division at
No(s): CP-14-CR-0000138-2023

BEFORE:  OLSON, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED JULY 15, 2025**

Appellant, Johnathan Wallace, appeals *nunc pro tunc* from the
aggregate judgment of sentence of 10½ to 21 years' incarceration, imposed
after he was convicted, following a non-jury trial, of various offenses, including
strangulation (18 Pa.C.S. § 2718(a)(1)) and aggravated assault (18 Pa.C.S.
§ 2702(a)(1)).   On appeal, Appellant challenges the sufficiency of the
evidence to sustain his convictions, as well as discretionary aspects of his
sentence.  After careful review, we affirm.

Briefly, Appellant's convictions stemmed from evidence that he
assaulted the mother of his two young children, causing her significant
injuries, including a fractured jaw that required surgery to repair.  Appellant
proceeded to a non-jury trial on October 16, 2023, at the close of which he
was convicted of strangulation and aggravated assault, as well as simple
assault (18 Pa.C.S. § 2701(a)(1)), disorderly conduct (18 Pa.C.S.

§ 5503(a)(1)), harassment (18 Pa.C.S. § 2709(a)(1)), terroristic threats (18 Pa.C.S. § 2706(a)(1)), and false imprisonment (18 Pa.C.S. § 2903(a)).  On November 9, 2023, the court sentenced Appellant to the aggregate term set forth *supra*, which included consecutive terms of 4½ to 9 years' incarceration for his strangulation conviction, and a term of 6 to 12 years' incarceration for his aggravated assault offense.  Appellant's sentences for his other offenses were all imposed to run concurrently.

On December 8, 2023, Appellant filed a counseled motion entitled, "Application for Leave to File Post Sentence Motions *Nunc Pro Tunc*."  On December 14, 2023, the trial court entered an "Order Rescheduling Hearing (*Nunc Pro Tunc* Granted)."  On January 26, 2024, Appellant filed a counseled post-sentence motion.  On May 29, 2024, the court denied his post-sentence motion, and on June 24, 2024, counsel for Appellant filed the instant notice of appeal.

Before addressing the issues Appellant raises herein, we note that a notice of appeal must be filed within 30 days of the entry of the order being appealed.  *See* Pa.R.A.P. 903(a).  This Court may not extend the time for filing a notice of appeal.  *See* Pa.R.A.P. 105(b).  A written post-sentence motion must be filed no later than 10 days after imposition of sentence.  *See* Pa.R.Crim.P. 720(A)(1).  A timely motion tolls the appeal period; an untimely motion does not.  *See Commonwealth v. Dreves*, 839 A.2d 1122 (Pa. Super. 2003) (*en banc*); *Commonwealth v. Felmlee*, 828 A.2d 1105 (Pa. Super. 2003) (*en banc*); *Commonwealth v. Capaldi*, 112 A.3d 1242 (Pa.

Super. 2015). Nevertheless, a post-sentence motion filed *nunc pro tunc* may toll the appeal period, but only if two conditions are met. **Dreves**, 839 A.2d at 1128. First, within 30 days from the judgment of sentence, a defendant must request permission from the trial court to consider a post-sentence motion *nunc pro tunc* and provide sufficient reasons to excuse the late filing. **Id.** Second, the trial court must expressly permit the filing of a post-sentence motion *nunc pro tunc*, **also within 30 days from the imposition of sentence. Id.**

Here, the trial court's docket indicates that Appellant did not file his notice of appeal within 30 days of the underlying judgment of sentence. Furthermore, while counsel for Appellant requested leave to file a post-sentence motion *nunc pro tunc* on December 8, 2023, which was within 30 days of sentencing, there is no indication that the trial court **expressly granted** *nunc pro tunc* relief by Monday, December 11, 2023, 30 days after the judgment of sentence. Instead, it appears from the trial court's docket that an order granting Appellant's request to file a post-sentence motion *nunc pro tunc* was not entered until December 14, 2023. **See Dreves**, 839 A.2d at 1128 n.6 (stating that a "trial court's decision on a request to file a post-sentence motion *nunc pro tunc* must be rendered within 30 days of the imposition of sentence"). Therefore, because Appellant filed his January 26, 2024 post-sentence motion later than 10 days after the imposition of his sentence, and the trial court did not enter an order expressly granting *nunc pro tunc* relief within 30 days of the entry of the November 9, 2023 judgment

of sentence, it appears the post-sentence motion did not toll the appeal period, therefore rendering Appellant's June 24, 2024 notice of appeal untimely.

In light of the foregoing, on July 15, 2024, this Court directed counsel for Appellant to show cause why the instant appeal should not be quashed as untimely filed on June 24, 2024, from the judgment of sentence imposed on November 9, 2023. On July 23, 2024, counsel for Appellant filed a response, to which he attached emails between himself and court staff, including the judge's assistant, wherein counsel inquired about the status of his motion for *nunc pro tunc* relief and was informed that the motion would be granted. Notably, this correspondence occurred within the 30-day period following sentencing. Accordingly, we conclude that a breakdown occurred which excuses the untimeliness of this appeal. ***See Commonwealth v. Stansbury***, 219 A.3d 157, 160 (Pa. Super. 2019) ("We have many times declined to quash an appeal when the defect resulted from an appellant's acting in accordance with misinformation relayed to him by the trial court.") (citing ***Commonwealth v. Flowers***, 149 A.3d 867, 872 (Pa. Super. 2016) (holding that a breakdown in court operations granted this Court jurisdiction over an untimely appeal where the trial court failed to correct counsel's misstatement about the deadline for filing an appeal and incorrectly provided that the appellant had an additional thirty days to appeal from the order denying a motion for reconsideration of sentence imposed upon revocation of intermediate punishment); ***Commonwealth v. Patterson***, 940 A.2d 493, 498 (Pa. Super. 2007) (compiling cases in which the "courts of this

Commonwealth have held that a court breakdown occurred in instances where the trial court, at the time of sentencing, either failed to advise [the a]ppellant of his post-sentence and appellate rights or misadvised him"); *Commonwealth v. Parlante*, 823 A.2d 927, 929 (Pa. Super. 2003) ("[W]e decline to quash this appeal because [the late appeal] resulted from the trial court's misstatement of the appeal period, which operated as a breakdown in the court's operation.") (internal quotation marks omitted); *Commonwealth v. Coolbaugh*, 770 A.2d 788, 791 (Pa. Super. 2001) (same)).

Appellant and the trial court have complied with Pa.R.A.P. 1925. Herein, Appellant states four issues for our review:

> 1) Was there sufficient evidence to establish that [Appellant] committed the act of aggravated assault that resulted in serious bodily injury under circumstances manifesting extreme indifference to the value of human life?
>
> 2) Was there sufficient evidence to establish that [Appellant] acted with intent to impede the victim's breathing to support a conviction of strangulation?
>
> 3) Was the consecutive sentence imposed excessive considering that the offenses of aggravated assault and strangulation were closely related in time and scope?
>
> 4) Did the sentencing court commit an error of law by not adequately considering mitigating factors, and [Appellant's] rehabilitative needs?

Appellant's Brief at 4 (unnecessary capitalization omitted).

In assessing Appellant's issues, we have reviewed the certified record, the briefs of the parties, and the applicable law. Additionally, we have examined the well-reasoned opinion of the Honorable Julia R. Rater of the

Court of Common Pleas of Centre County. We conclude that Judge Rater's comprehensive opinion accurately disposes of the issues presented by Appellant. Accordingly, we adopt Judge Rater's opinion as our own and affirm Appellant's judgment of sentence for the reasons set forth therein.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 07/15/2025

IN THE COURT OF COMMON PLEAS OF CENTRE COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA　　　:

　　　　　v.　　　　　　　　　　　　　:　　No. CP-14-CR-138-2023

JOHNATHAN WALLACE　　　　　　　　　:

*Attorney for the Commonwealth:*　　　　　　　*Joshua Andrews, Esquire*
*Attorney for Defendant:*　　　　　　　　　　*Helen A. Stolinas, Esquire*

## OPINION IN RESPONSE TO MATTERS COMPLAINED OF ON APPEAL

Defendant Johnathan Wallace ("Defendant") appeals from the judgment of sentence entered November 9, 2023. Following a non-jury trial that took place on October 16, 2023, the Court found Defendant guilty of seven offenses, namely: (1) strangulation: applying pressure to the throat or neck 18 Pa.C.S.A § 2718(a)(1); (2) aggravated assault 18 Pa.C.S.A § 2702(a)(1); (3) simple assault 18 Pa.C.S.A § 2701(a)(1); (4) disorderly conduct: engage in fighting 18 Pa.C.S.A § 5503(a)(1); (5) harassment: strike, shove, kick, etc. 18 Pa.C.S.A § 2709(a)(1); (6) terroristic threats 18 Pa.C.S.A § 2706(a)(1); and (7) false imprisonment 18 Pa.C.S.A § 2903(a).

On November 9, 2023, the Court sentenced Defendant to incarceration for a period of four and one-half (4 ½) years to nine (9) years on Count 1 (strangulation), a period of six (6) years to twelve (12) years on Count 2 (aggravated assault) to run consecutive to the sentence imposed on Count 1 (strangulation), a period of six (6) months to twelve (12) months on Count 4 (disorderly conduct) to run concurrent to the term imposed on Count 1 (strangulation), and a period of ninety (90) days on Count 5 (harassment) to run concurrent to the term imposed on Count 1 (strangulation). The Court sentenced Defendant to

☒O ☐RD ☐S

probation for a period of five (5) years on Count 6 (terroristic threats) to run concurrent to the term imposed on Count 1 (strangulation), and to probation for a period of two (2) years on Count 7 (false imprisonment) to run concurrent to the term imposed on Count 1 (strangulation). No separate sentence was imposed on Count 3 (simple assault), as it merged with Count 2 (aggravated assault).

Defendant filed a *pro se* Petition on November 29, 2023. Thereafter, his present counsel was appointed and granted leave to file Post-Sentence Motions *nunc pro tunc*, which were filed on January 26, 2024. After a hearing on the Motions on February 16, 2024, a Motion by Defendant to extend time for decision of post sentence motions agreed upon by the Commonwealth, and Defendant's submission of a Brief in Support of Post Sentence Motions on May 16, 2024, the Court denied Defendant's Post Sentence Motions by Order dated May 28, 2024. Defendant filed a timely appeal on June 24, 2024, and a Concise Statement of Matters Complained of on Appeal on July 12, 2024.

Defendant raises three issues in his Concise Statement:

1. The Court erred in finding Defendant guilty of aggravated assault because the Commonwealth did not present sufficient evidence to establish that Defendant committed the act under circumstances manifesting extreme indifference to the value of human life.

2. The Court erred in finding Defendant guilty of strangulation because the Commonwealth did not present sufficient evidence to establish that the victim's breathing was impeded.

3. The Court erred in imposing consecutive sentences of incarceration for aggravated assault and strangulation because they were closely related in time and scope and the Court did not adequately consider mitigating factors such as Defendant's mental health issues and participation in programming while incarcerated.

2

The Court disagrees with Defendant's Statement for the reasons set forth below.

## Background

The offenses occurred in the Wyndham hotel located in State College, Pennsylvania, where the Defendant and victim were spending the night with their two young children. During trial, the Court heard testimony from five witnesses for the Commonwealth, including the victim, and testimony from the Defendant. The Court also watched the body camera footage from the camera worn by the responding police officer. That footage unmistakably showed the police officer riding the elevator to the residential floor on which the Defendant and victim were located. As soon as the elevator door opened, the victim could be heard repeatedly yelling "get off of me, get off of me." The officer entered the hotel hallway and yelled "hey...hey" in a loud voice. At that point, the Defendant had the victim shoved up against the wall. After the police officer yelled "hey," the Defendant looked down the hallway toward the police officer, turned back to the victim, and proceeded to punch her 3 times in the face and jaw. The Defendant then pushed the victim to the floor and landed 2 more punches to her face and jaw area. The Defendant stopped beating the victim only after the police officer reached and tased him. Within moments thereafter, the Defendant began calling to the victim that he needed her, seemingly attempting to manipulate her and interfere with what she would tell the police about the incident, all while minimizing his own actions and attempting to downplay the impact on the victim. This video evidence was undisputable.

Other events were described by witnesses and the victim. The victim testified that despite there being a Protection from Abuse Order in place against the Defendant, she

3

agreed to meet him at the hotel so that he could see their children. *Criminal Nonjury Trial Transcript ("CNJT Tr. ")*, P. 62, l. 23 – P. 64, l. 12. While in the hotel room, the Defendant began to interrogate the victim about her activities while he was incarcerated. *Id.* at P. 68, l. 1 – 21. When the victim attempted to use the hotel phone to call for help, the Defendant snatched the phone, slammed it, and pulled out the cord. The victim's cell phone had been knocked to the floor. *Id.* at P. 69, l. 9 – 22. The victim attempted to pick up the children to leave the room, but the Defendant pulled the children to prevent her from taking them. The victim then attempted to leave alone, but the Defendant blocked the door, pushed and shoved her. The victim went to the bathroom, and the Defendant followed her, grabbed her multiple times and punched her. *Id.* at P. 70 - 72. The victim eventually made it into the hallway, and the Defendant grabbed her, tripped her and punched her again. *Id.* at P. 73 – 74.

At some point, the dispute was interrupted by a hotel patron, Mr. Goldberg. Mr. Goldberg testified that he was woken up by "a lot of shouting and screaming in the hallway." *Id.* at P. 9, l. 13 – 18. He looked out of his hotel door to see the Defendant standing above the victim who was either sitting or somehow restrained on the ground. The Defendant was yelling, while the victim was saying that she wanted to get back to her children. *Id.* at P. 10. The Defendant was trying to move the victim, and he asked Mr. Goldberg to help move her. Mr. Goldberg declined. Mr. Goldberg went back into his room, and his wife called 911. *Id.* at P. 10 - 11.

With Mr. Goldberg back in his room, the Defendant pulled the victim by her bag and hair up the hallway. *Id.* at P. 75 - 76. While on the floor, the Defendant choked her.

4

*Id.* The victim testified that she could not breathe because Defendant had a hand on her throat. He placed "a lot of pressure" on her neck and was squeezing it. *Id.* at P. 76, l. 1 – P. 77, l. 18. The victim testified that she asked him to stop, being barely able to speak. *Id.* at P. 88. The Defendant responded "bitch, I want you dead." *Id.* at P. 77, l. 19 – 25. Near this time, the responding police officer entered the hallway. The victim testified that when the Defendant saw the officer, the Defendant said that it was "going to be over for [the victim]" and began punching her. *Id.* at P. 77, l. 23 - P. 78, l. 4. The responding officer testified that the Defendant punched the victim 3 times before his body camera stabilized, after which 5 punches are clearly visible on the camera footage. *Id.* at P. 32, l. 22 – P. 33, l. 5.

The victim suffered a fractured jaw, which the treating physician described as being "broken in two pieces." *Id.* at P. 45., l. 2 – 10. Surgical repair involved installation of 14 screws and wiring the victim's jaw shut with a hybrid arch bar apparatus for approximately a month, during which she had to carry wire cutters in case of choking or vomiting. Following removal of the wires, the hybrid arch system was kept in place with rubber bands for approximately 5 weeks. The victim was confined to a liquid diet for approximately three (3) months. *Id.* at P. 55, l. 10 – P. 58, l. 6. The victim described it as "unimaginable pain" and the "worst pain [she]ever felt in [her] life." *Id.* at P. 80 - 82; 85. She also suffered a broken tooth, scratches on her face, bruising and cuts on her arm, and bruising to her neck. The responding emergency medical technician testified that during the transport to the hospital, the victim expressed that she was having pain in her neck and throat from having been choked. *Id.* at P. 38., l. 10 – 19. These complaints were in addition to the

5

initial observations of a chipped tooth, pain and swelling on the right side of her jaw, and pain in the left shoulder. *Id.* at P. 36, l. 4 – 22.

Unfortunately, the Defendant's wrongful behavior toward the victim did not end there. Despite the active Protection from Abuse Order and the pending criminal charges, the Defendant repeatedly contacted the victim prior to trial, attempting to persuade her not to testify against him. One letter, which discussed his previous letters, was sent just days before the trial. In the letter, the Defendant minimized his conduct, attempted to appeal to the victim's sympathy, and asked her not to attend the trial. *Id.* at 97 – 98. In a letter sent post-trial, the Defendant wrote "all you got is a broke jaw," seemingly minimizing his conduct; "it's crazy how you got up there and lied like that some of them pointless but it's okay I wont stop fighting to give whateva [sic] time they give me back," seemingly threatening the victim; "You gave the cops my letter? Really wow you are beyond evil," seemingly chastising her; and "you obviously don't give a F- about the truth, me as your kids father, or me doing over a decade in prison," seemingly attempting to manipulate her and pull on her heartstrings as a mother. *Commonwealth's Sentencing Memorandum, Attachments A and B.* Again, the Defendant displayed to the Court that he is undeterred by a Court Order, and that he does not grasp or care about the impact of his actions.

## Discussion

I.  **The evidence at trial was sufficient to support the conviction of aggravated assault under 18 Pa.C.S. §2702(a)(1)**

In considering a challenge to the sufficiency of the evidence, the court "must determine whether the evidence admitted at trial and all the reasonable inferences drawn

6

therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt." *Commonwealth v. Weitzel*, 304 A.3d 1219, 1224 (Pa. Super. 2023). "The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Commonwealth v. Russell*, 209 A.3d 419, 426 (Pa. Super. 2019). It is within the province of the fact-finder to determine the weight to accord to each witness's testimony and to believe all, part or none of the evidence. *Id.* Further, "the uncorroborated testimony of a single witness is sufficient to sustain a conviction for a criminal offense, so long as that testimony can address and, in fact, addresses, every element of the charged crime." *Commonwealth v. Johnson*, 180 A.3d 474, 481 (Pa. Super. 2018).

The offense of aggravated assault is defined, in relevant part, as follows:

**(a) Offense defined.** – A person is guilty of aggravated assault if he:

(1) Attempts to cause serious bodily injury to another or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life.

18 Pa.C.S. §2702(a)(1). "Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. Having broken the victim's jaw, the Defendant does not contest that serious bodily injury occurred. As stated by Defendant in his Brief in Support of Post Sentence Motions, "The evidence at trial established that the defendant struck the victim, which resulted in her jaw being broken. This did result in serious bodily injury to the victim." *Defendant's Brief in Support of Post Sentence Motions*, unnumbered page 2.

7

The evidence presented at trial was sufficient to allow the Court to conclude that the Defendant intended to cause the serious bodily injury. "Intent to cause serious bodily injury may be shown by the circumstances surrounding the attack. In determining whether intent was proven from such circumstances, the fact finder is free to conclude the accused intended the natural and probable consequences of his actions to result therefrom." *Commonwealth v. Bruce*, 916 A.2d 657, 661 (Pa. Super. 2007). The *Bruce* court further explained that:

> Circumstances deemed probative in this inquiry have included evidence that the assailant was disproportionately larger or stronger than the victim, that the assailant had to be restrained from escalating his attack, that the assailant had a weapon or other implement to aid his attack, or that the assailant made statements before, during, or after the attack which might indicate his intent to inflict further injury. *Commonwealth v. Alexander*, 477 Pa. 190, 194, 383 A.2d 887, 889 (1978). Depending on the circumstances, "even a single punch may be sufficient." *Dailey*, 828 A.2d at 360. *See also Alexander*, 477 Pa. at 194, 383 A.2d at 889 ("We hasten to add that a simple assault combined with other surrounding circumstances may, in a proper case, be sufficient to support a finding that an assailant attempted to inflict serious bodily injury, thereby constituting aggravated assault.").

*Bruce*, 916 A.2d at 661 – 662.

Further, when, as in the present case, a victim suffers a serious bodily injury, the Commonwealth is not required to prove specific intent to cause such harm. *Commonwealth v. Patrick*, 933 A.2d 1043, 1046 (Pa. Super. 2007). The Commonwealth need only prove that the defendant acted recklessly under circumstances manifesting an extreme indifference to the value of human life. *Id.*; see also *Commonwealth v. Burton*, 2 A.3d 598, 602-603 (Pa. Super. 2010). To prevail on a theory of recklessness, the Commonwealth must show the assailant's recklessness rose to the level of malice such that one could

8

reasonably anticipate death or serious bodily injury would likely and logically result from his conduct. *Bruce*, 916 A.2d at 664.

In the present case, the evidence presented at trial established that the Defendant intended to cause serious bodily injury to the victim, and at the very least, that he acted recklessly under circumstances manifesting an extreme indifference to the value of human life when he broke the victim's jaw after landing approximately 8 forceful punches to her face, all in the presence of the responding police officer who yelled "hey" at the Defendant, after which the Defendant looked at the police officer before turning back to the restrained victim and repeatedly, aggressively punching her eight times. The victim credibly testified that the Defendant said "bitch, I want you dead" as he was restraining her, and proclaimed that it was "going to be over for [her]" once he saw the police officer arrive. *CNJT Tr.*, P. 77, l. 19 - 78, l. 4. The responding police officer credibly testified that the Defendant punched the victim three times before the officer's body camera stabilized. *Id.* at P. 32, l. 22 – P. 33, l.5. The stabilized body camera footage played during trial showed the Defendant punching the restrained victim three times in the face and jaw as he held her against the wall. The footage then showed the Defendant push the victim to the floor and stand over top of her, punching her two more times in the face and jaw before the responding police officer was able to reach the Defendant. The body camera footage showed that the Defendant, who was seemingly significantly stronger than the victim, did not stop beating her until the police officer tased him.

The record more than amply supports this Court's finding that the Defendant intended to cause serious bodily injury to the victim, and that the Defendant accomplished

9

his goal. The record likewise amply supports this Court's finding that the Defendant acted at least recklessly in causing serious bodily injury to the victim within the parameters of the crime of aggravated assault as defined in 18 Pa.C.S. § 2702(a)(1).

## II. The evidence at trial was sufficient to support the conviction of strangulation under 18 Pa.C.S.A § 2718(a)(1)

The offense of strangulation is defined, in relevant part, as follows:

> **(a) Offense defined.**—A person commits the offense of strangulation if the person knowingly or intentionally impedes the breathing or circulation of the blood of another person by:
>
>> (1) applying pressure to the throat or neck
>
> \* \* \*
>
> **(b) Physical injury.**—Infliction of a physical injury to a victim shall not be an element of the offense. The lack of physical injury to a victim shall not be a defense in a prosecution under this section.

18 Pa.C.S.A § 2718(a)(1) and (b).

Defendant claims that the Court erred in finding him guilty of strangulation because the Commonwealth did not present sufficient evidence to establish that the victim's breathing was impeded. As recently stated by the Pennsylvania Superior Court:

> The Crimes Code does not require that the victim be unable to breathe to prove strangulation or require proof of a particular level of obstruction of the victim's breathing to prove strangulation. 18 Pa.C.S. § 2718(a)(1); *[Commonwealth v.] Horlick*, 296 A.3d [60] at 63 [Pa. Super. 2023]. Rather, the Commonwealth need only prove that the defendant hindered or obstructed the victim's breathing. *Commonwealth v. Solorio*, No. 1966 MDA 2019, slip op. at 5-7, 2020 WL 5568607 (Pa. Super. September 17, 2020) (unpublished memorandum). Testimony of the victim that the defendant put pressure on her neck that caused difficulty breathing is therefore sufficient to prove the elements of

10

strangulation. *[Commonwealth v.] Lowmaster*, No. 221 WDA 2019, slip op. at 7-8 ("No proof beyond the victim's testimony that the defendant put pressure on his or her neck that caused difficulty breathing is required to prove the elements of strangulation"); *Solorio*, No. 1966 MDA 2019, slip op. at 5-7 (testimony of victim that she was "getting to where [she] couldn't breathe" was sufficient to support strangulation conviction) (brackets in original).

*Commonwealth v. Weitzel*, 304 A.3d 1219, 1225 (Pa. Super. 2023).

The evidence at trial was sufficient to support the defendant's conviction of strangulation. The victim credibly explained the course of events on the evening of the subject acts, which lead to her and the Defendant being in the hotel hallway. She explained that once the intervening patron went back into his room, the Defendant pulled the victim by her bag and hair up the hallway. With the victim restrained on the floor, the Defendant choked her. *CNJT Tr.*, P. 75 - 76. The victim testified that she could not breathe because the Defendant had a hand on her throat. He placed "a lot of pressure" on her neck and was squeezing it. *Id.* at P. 76. l. 1 – P. 77, l. 18. The victim testified that she asked him to stop, being barely able to speak. *Id.* at P. 88. To this plea, the Defendant responded "bitch, I want you dead." *Id.* at P. 77, l. 19 – 25. The Court found the victim's testimony credible. Additionally, the responding emergency medical technician credibly testified that during the ambulance transport to the hospital, the victim expressed that she was having pain in her neck and throat from being choked. *Id.* at P. 38, l. 10 – 19. In consideration of this evidence, the Court did not err in finding the Defendant guilty of strangulation.

11

III. **The Court did not err in imposing consecutive sentences of incarceration for aggravated assault and strangulation and the Court adequately considered any mitigating factors**

"It is well-established that Pennsylvania law affords the trial court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed." *Commonwealth v. Dove*, 301 A.3d 427, 436 (Pa. Super. 2023), *citing Commonwealth v. Austin*, 66 A.3d 798, 808 (Pa. Super. 2013) and 42 Pa.C.S.A. § 9721(a). A trial court does not abuse this discretion unless the sentence is "grossly disparate" to the conduct at issue, or "viscerally appear[s] as patently unreasonable." *Commonwealth v. Gonzalez–Dejusus*, 994 A.2d 595, 599 (Pa. Super. 2010). A defendant is not entitled to a volume discount for his crimes by having all sentences run concurrently. *Dove*, 301 A.3d at 437; *Commonwealth v. Zirkle*, 107 A.3d 127, 134 (Pa. Super. 2014), *appeal denied*, 632 Pa. 671, 117 A.3d 297 (2015); and *Commonwealth v. Hoag*, 665 A.2d 1212, 1214 (Pa. Super. 1995). "The imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregated sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment. *Dove*, 301 A.3d at 327.

Sentencing is a matter vested in the sound discretion of the sentencing judge, whose judgment should not be disturbed absent a manifest abuse of discretion. *Commonwealth v. Carr*, 262 A.3d 561, 568 (Pa. Super. 2021). A sentencing judge has broad discretion in determining a reasonable penalty. Appellate courts afford the sentencing court great deference, as the sentencing court is in the best position to "view the defendant's character,

12

displays of remorse, defiance[,] or indifference, and the overall effect and nature of the crime." *Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007).

When imposing a sentence, the sentencing court must consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). The sentencing court "is required to consider the particular circumstances of the offense and the character of the defendant." *Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa. Super. 2002), *cert. denied*, 545 U.S. 1148, 125 S.Ct. 2984, 162 L.Ed.2d 902 (2005). "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." *Id.* Further, "where the sentencing judge had the benefit of a presentence investigation report, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with any mitigating statutory factors." *Commonwealth v. Finnecy*, 135 A.3d 1028, 1038 (Pa. Super. 2016).

Prior to sentencing, the Court reviewed in full the Presentence Investigation (PSI) report prepared by the Centre County Probation and Parole Department and the Commonwealth's Sentencing Memorandum. *Sentencing Tr.*, P. 15, l. 5 – 11. The standard range of the sentencing guidelines for strangulation was 60 to 72 months with a prior record score of 5 and offense gravity score of 10. *Sentencing Tr.*, P. 15 – 16. The Court sentenced Defendant to 54 months to 9 years. The standard range of the sentencing guidelines for aggravated assault was 84 – 102 months with a prior record score of 5 and an offense gravity score of 12. The Court sentenced Defendant to 72 months to 12 years. The

13

Defendant's prior adult criminal record consisted of possession, false identification to law enforcement, possession with intent to deliver, possession of firearms, and possession of firearms while on probation for the prior possession of firearms offense. The PSI report indicated that the Defendant had been attending AA and anger management courses during incarceration. There was no other programming discussed in the PSI report or by the Defendant at any time.

Included within the Commonwealth's Sentencing Memorandum was a letter Defendant sent to the victim following trial. The Defendant made other inappropriate communications to the victim, despite there being a Protection from Abuse Order in effect, but this most recent letter abundantly demonstrated Defendant's defiance of the law, lack of recognition of his wrongdoing, and disrespect toward the victim. The Defendant wrote "all you got is a broke jaw," seemingly minimizing his conduct; "it's crazy how you got up there and lied like that some of them pointless but it's okay I wont stop fighting to give whateva [sic] time they give me back," seemingly threatening the victim; "You gave the cops my letter? Really wow you are beyond evil," seemingly chastising her for reporting his misconduct; and "you obviously don't give a F- about the truth, me as your kids father, or me doing over a decade in prison," seemingly attempting to manipulate her and pull on her heartstrings as a mother. *Commonwealth's Sentencing Memorandum, Attachments A and B.* At sentencing, the Defendant spoke, claiming that "there were no threats" in his letters to the victim and that he doesn't "reach out intimidating or threatening her." *Sentencing Tr.,* P. 31 - 32

14

At sentencing, the Defendant also spoke of having been diagnosed with adjustment disorder and schizophrenia while incarcerated at a state correctional institution, and of having been diagnosed with PTSD, anxiety and depression by an outside physician. *Sentencing Tr.*, P. 30. The Court considered those diagnoses in rendering its sentence, as well as Defendant's statement that he was not taking his medication while non-incarcerated, but that he is taking his medication while incarcerated. The Court considered the Defendant's rehabilitative needs.

During the sentencing hearing, the Defendant apologized to the victim and her family that they "all had to go through this," but minimized his conduct saying that he doesn't know "what came over me or possessed me that night" and alleged that the victim and her family "know for a fact that the monster that you seen in that video wasn't who I am." *Sentencing Tr.*, P. 32. The Court believes that at the time of sentencing, Defendant lacked remorse for the harm he imparted upon the victim and failed to recognize the impact of his actions.

At sentencing, the victim spoke about how the Defendant's actions impacted her life. She said that it "changed my life, flipped it upside down." *Sentencing Tr.*, P. 22. L. 10 – 11. Speaking of the Defendant's letters to her, she said "And to sit there and still blame me, to write letters blaming me, to make it a bare minimum that all you did was break my jaw, no, that was the least. I just thank God that I made it out of there. I couldn't breathe. You choked me. Tried to choke me to death, John. I begged you to stop." *Sentencing Tr.*, P. 24, l. 12 – 17. Further regarding her injuries, the victim said that her broken jaw "was the worst pain I ever had in my life" and after having her jaw wired shut

15

for 3 months, she still wakes up with pain. She elaborated "you kicked me, stomped me, dragged me....and then for you it was just a broken jaw?," seemingly referencing his statement in the letter the Defendant sent her post-trial. *Sentencing Tr.*, P. 26, l.2 - 12

After hearing argument, the statement by the victim and the statement by the Defendant, and having reviewed the PSI report, this Court imposed consecutive individual sentences for strangulation and aggravated assault. The Court provided reasoning on the record. *Sentencing Tr.*, P. 42 – 44. The Court submits that Defendant's assertion that his overall sentence is excessive is simply a request for a volume discount for his offenses to which he is not entitled. The Court's sentences considered Defendant's rehabilitative needs, the gravity of the offenses committed, and by the need to protect the victim, their shared children and the community. The Court believes that a lesser sentence would depreciate the seriousness of the crimes committed by the Defendant, and asserts that the sentence imposed remains appropriate.

## Conclusion

This Court was correct in entering its judgment of sentence and in denying Defendant's Post-Sentence Motions. No reversible error occurred, and the Court's Sentencing Orders were proper. For the foregoing reasons, this Court respectfully requests that its Sentencing Orders of November 9, 2023 remain undisturbed.

BY THE COURT:

Julia R. Rater, Judge

16